(99 P.3d. 133)
No. 89,826

ROSEMARY A. CUNNINGHAM, *Appellant,* v. RIVERSIDE HEALTH SYSTEM, INC., *Appellee.*

Opinion filed October 31, 2003.

*James A. Cline*, of Accident Recovery Team, P.A., of Wichita, for appellant.

*Gregory S. Young*, of Hinkle Elkouri Law Firm, LLC, of Wichita, for appellee.

Before JOHNSON, P.J., GREEN, J., and BRAZIL, S.J.

GREEN, J.: Rosemary Cunningham appeals from the trial court's grant of summary judgment in favor of Riverside Health System, Inc. (Riverside). On appeal, Cunningham alleges that the trial court erred in holding that expert testimony was required to establish (1) deviation from the standard of care and (2) causation in this negligence case. Although Cunningham contends that the common knowledge exception to expert testimony bars summary judgment, we reject this argument. The complexity of Cunningham's medical situation as well as her preexisting condition of osteoporosis required expert testimony to prove that the alleged negligent conduct breached the applicable standard of care and caused the injury. Because Cunningham failed to furnish the necessary expert evidence, Riverside has established a complete defense and summary judgment was appropriate. Accordingly, we affirm the trial court's grant of summary judgment.

In August 2001, Rosemary Cunningham sued Riverside alleging that Lilly Profit, a Riverside nursing assistant, negligently twisted Cunningham's leg while assisting her into bed, causing her femur to break. In her deposition, Cunningham testified that after Profit assisted her into bed, Cunningham asked Profit to move her leg into a position recommended by the treating physician, Dr. Michael Estivo. Profit "gave too hard of a tug" and raised Cunningham's leg off the bed, at which time she felt her leg "crack," and she yelled out. At that point, Profit dropped Cunningham's leg 16 inches onto the bed and walked out of the room. Cunningham testified that Riverside's staff was instructed by the doctor to "not let loose" when lowering Cunningham's leg. She also testified that her leg "wasn't supposed to have any jarring."

At the time of the incident, Cunningham was a patient in Riverside's skilled nursing unit recovering from knee surgery. Specifically, she was diagnosed with "advanced degenerative joint disease" and "severe osteoarthritis with chronic synovitis and synovial cyst with areas of bone reabsorption, left knee."

Riverside denied all claims of negligence and causation of Cunningham's injuries and moved for summary judgment. In the motion, Riverside referenced reports from two expert witnesses, Dr. Henry Finn and Nancy Richards, R.N., as well as Cunningham's treating orthopedic physician, Dr. Estivo.

Dr. Finn, medical director of the University of Chicago Bone and Joint Replacement Center and chief of orthopedic surgery at Weiss Memorial Hospital/University of Chicago Hospitals, reviewed Cunningham's medical records and concluded that there was no breach of the applicable standard of care and that the fracture was not caused by plaintiff's transfer into bed. Specifically, Dr. Finn wrote that "the fractured femur was most probably caused by disuse osteoporosis with a possible contribution by a notch of the anterior cortex. The fracture at issue was not caused by the alleged negligence of the hospital staff."

Dr. Estivo also stated in his medical report that "the fracture is the result of her being quite osteoporotic and really does not involve anyone at fault, but rather simply the fact that she is osteoporotic and these things can occur on occasion." In addition, expert

witness Richards concluded that there was no deviation from the standard of care.

The trial court conducted a hearing on the summary judgment motion. At the hearing, Cunningham acknowledged that she responded to Riverside's summary judgment motion outside of the 21-day time period required by Supreme Court Rule 141 (2002 Kan. Ct. R. Annot. 189) and K.S.A. 2002 Supp. 60-256. Cunningham further stated that the facts contained in the summary judgment motion were uncontroverted and that she was arguing the sole legal issue of whether expert testimony was necessary to establish the standard of care and causation in this negligence case.

At the hearing, the trial court looked at the circumstances surrounding the incident. These included the fact that Cunningham was recovering from knee replacement surgery, that Cunningham was suffering from the preexisting condition of osteoporosis, and that the nurse's assistant was positioning Cunningham's immobilized leg in accordance with her doctor's recommendations for healing. The trial court concluded that the written statements of Dr. Finn, referenced in Riverside's summary judgment motion, were uncontroverted. Specifically, the trial court looked at Dr. Finn's statement that there was no deviation from the standard of acceptable care and treatment of Cunningham.

In its journal entry, the trial court ruled that Cunningham failed to "set forth sufficient evidence and information to support the claim as alleged." The court determined that expert testimony was required to establish both that the nurse's conduct departed from the acceptable standard of care in the community and that the nurse's conduct caused the fracture.

Specifically, the trial court found that plaintiff's allegations involve nursing service functions which were in compliance with the doctor's recommendations and must be evaluated on the facts and circumstances of this complex medical situation. As a result, the court found that the common knowledge exception did not apply and expert testimony was required to prove the appropriate standard of care. In addition, the trial court determined that Cunningham's preexisting condition and the circumstances of her case required expert testimony to establish causation. Because Cunningham failed to provide

any expert witnesses, the court granted the summary judgment motion. Cunningham timely appeals.

The standard of review is familiar. Summary judgment may be granted

"when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rule and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

We must also bear in mind that "summary judgments are to be granted with caution in negligence actions. [Citation omitted.]" *Fettke v. City of Wichita*, 264 Kan. 629, 632, 957 P.2d 409 (1998). Nevertheless, defendants are entitled to prevail if they can establish an absence of evidence to support plaintiff's case. *Crooks v. Greene*, 12 Kan. App. 2d 62, 64, 736 P.2d 78 (1987).

With these standards firmly in mind, we turn now to the merits of the case.

First, Cunningham argues that this is an ordinary negligence case rather than a medical malpractice case and implies, therefore, that she is not required to present expert testimony. Whether a case is classified as ordinary negligence or medical malpractice is not determinative of whether expert testimony is required. See *MacTavish v. Rhode Island Hosp.*, 795 A.2d 1119, 1121 (R.I. 2002) (When alleged negligence involves professional skill and judgment of a nurse, expert testimony is required.). Therefore, Cunningham's argument is irrelevant. Cunningham attempts to disprove point B (that this is a medical malpractice case) instead of disproving point A (that Cunningham needed to come forward with expert testimony to establish causation and breach of the standard of care) which is the real issue in this case. Cunningham commits the fallacy of irrelevance with this argument.

Next, Cunningham asserts that even if this was a medical malpractice case, she was not required to present expert evidence to establish either the breach of the standard of care or causation because the common knowledge exception applied to her case.

"[The] common knowledge exception applies if what is alleged to have occurred in the diagnosis, treatment, and care of a patient is so obviously lacking in reasonable care and the results are so bad that the lack of reasonable care would be apparent to and within the common knowledge and experience of mankind generally. [Citations omitted.]" *Webb v. Lungstrum*, 223 Kan. 487, 490, 575 P.2d 22 (1978).

## Causation

Cunningham argues that expert testimony was unnecessary to establish causation because she can point to a specific act of negligence that caused her injury. She alleges that medical x-rays proved Profit's conduct caused the injury because postsurgery x-rays showed no fracture of the femur, while x-rays taken after the negligent act detected a fracture. Nevertheless, the x-rays only showed that the fracture occurred some point after surgery. The x-rays do not show that Profit's alleged negligence caused the fracture, which is the critical point.

Cunningham's x-ray argument is an example of a post hoc fallacy. This fallacy assumes that because one event occurred before another, the first was the cause of the second. The only other evidence on the causal connection between Profit's alleged negligence and Cunningham's fractured leg was Cunningham's testimony that she felt her leg crack while Profit was assisting her. Nevertheless, this statement does not necessarily prove that Profit's conduct caused the injury. In fact, Riverside offered expert evidence concluding that Cunningham's preexisting condition of osteoporosis, and not Profit's conduct, caused the injury.

Moreover, when Riverside moved for summary judgment, suggesting that Cunningham lacked evidence on causation and on breach of the standard of care, she had a duty to come forward with sufficient evidence to show that there was something to submit to a jury. See *Hare v. Wendler*, 263 Kan. 434, 444, 949 P.2d 1141 (1997) ("When the motions for summary judgment were

filed, [plaintiff] had the burden to provide the necessary expert evidence. He must actively come forward with something of evidentiary value to establish a disputed material fact."). Cunningham, however, failed to present any expert evidence to show that her injury was caused by Profit's conduct.

Furthermore, as stated earlier, Cunningham failed to eliminate her osteoporosis as a cause of her injuries. In *Hare*, our Supreme Court decided that when a plaintiff has pre-existing conditions that may have caused the alleged injury, expert testimony is necessary to show that the negligent conduct caused the injury. The court concluded that "the causation issue is too complex to fit within the common knowledge exception and is beyond the capability of a lay person to decide." 263 Kan. at 445. In reaching its decision, our Supreme Court cited *Crooks,* which held that the common knowledge exception was inapplicable when the patient's preexisting condition of phlebitis could have contributed to his injury. 263 Kan. at 444.

Finally, Cunningham relies on *Hiatt v. Groce*, 215 Kan. 14, 523 P.2d 320 (1974), to support her position that she is not required to present expert testimony. In this case, our Supreme Court recognized the common knowledge exception and allowed the plaintiff to offer lay witness testimony to establish causation. Hiatt suffered lacerations, severe pain, and permanent nerve damage alleged to have resulted from a nurse's failure to timely summon the doctor. In *Hiatt*, like the case before this court, Hiatt had sued the hospital based upon its employee's negligent conduct. Unlike Hiatt, however, Cunningham suffers from osteoporosis that may have caused her injuries. Because Hiatt did not suffer from any preexisting condition, the holding is inapplicable to this case.

Here, the trial court ruled that Cunningham's preexisting condition and the circumstances of the case required expert testimony to establish causation. Based on our Supreme Court's holding in *Hare*, Cunningham needed to provide expert testimony eliminating her preexisting osteoporosis as the cause of her fracture.

We find that based on Cunningham's conditions of osteoporosis and recent knee surgery and the complexity of discerning what actually caused the fracture, expert testimony was necessary to es-

tablish a disputed material fact that Profit's conduct caused the injury.

*Standard of Care*

Finally, Cunningham alleges that expert testimony was unnecessary to show that Profit deviated from the appropriate standard of care. She argues that the "duty of reasonable care was breached when [Riverside's] employee pulled and tugged on Mrs. Cunningham's leg in such a manner as to cause Mrs. Cunningham's femur to fracture." She alleges that this type of conduct obviously falls within the common knowledge exception.

The extent and character of the care that a hospital owes its patients depends upon the circumstances of the particular case, and the measure of duty of a hospital is to exercise that degree of care, skill, and diligence used by hospitals generally in the community. *St. Francis Regional Med. Center, Inc. v. Hale*, 12 Kan. App. 2d 614, 619, 752 P.2d 129 (1988). " 'The standard of medical and hospital care which is to be applied in each case is not a rule of law, but a matter to be established by the testimony of competent medical experts.' [Citation omitted.]" *Hale*, 12 Kan. App. 2d at 619. "Negligence is never presumed and may not be inferred merely from a lack of success or an adverse result from treatment." *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 307, 756 P.2d 416 (1988).

During the summary judgment hearing, the trial court pointed to specific facts indicating that expert testimony was necessary to establish the standard of care. We agree with the trial court's reasoning. The hospital staff was aware of Cunningham's condition—she was in the hospital recovering from knee replacement surgery caused by a weakened bone condition. Cunningham was receiving postsurgery care in a skilled nursing unit where the staff had been given a doctor's recommendations as to the positioning and movement of Cunningham's leg. Based on these circumstances, we find that expert testimony was necessary to show a breach of the standard of care.

The trial court's grant of summary judgment is affirmed.