NOT DESIGNATED FOR PUBLICATION

No. 116,686

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WILLIAM VAN DORN, by MARY VAN DORN, his spouse and next friend,
*Appellees*,

v.

DIANE E. MCNISH, Administrator of the Estate of
William Rae McNish a/k/a/ William Ray McNish,
*Defendant*,

and

STEVEN PACHECO, and KANSAS TRUCKING, LLC,
*Appellants*.


MEMORANDUM OPINION


Appeal from Franklin District Court; ERIC W. GODDERZ, judge. Opinion filed January 12, 2018. Affirmed.


*James R. Jarrow* and *John A. Watt*, of Baker Sterchi Cowden & Rice, L.L.C., of Overland Park, for appellants.


*Christopher P. Sweeny* and *John E. Turner*, of Turner & Sweeny, of Kansas City, Missouri, and *Donald W. Vasos* and *David A Hoffman*, of Vasos Law Offices, of Fairway, for appellees.


Before STANDRIDGE, P.J., PIERRON, J., and BURGESS, S.J.


PER CURIAM:  This personal injury action involves two motor vehicle accidents, both of which occurred in a construction zone on Kansas Highway 68 in Franklin County. In the first accident, Steven Pacheco, an employee of Kansas Trucking, LLC,

1

negligently drove a dump truck off the side of the highway, leaving dirt in the westbound lane of traffic. For safety reasons, employees of Sunflower Paving, Inc., decided to close this lane of traffic. The second accident occurred approximately 26 minutes later, when William Rae McNish drove through the construction zone and struck William Van Dorn, a Sunflower Paving employee who was directing traffic in the westbound lane. Van Dorn suffered severe injuries as a result and later sued Pacheco, Kansas Trucking, and McNish for negligence. The case was presented to a jury. After hearing the evidence and the arguments of counsel, the jury found Pacheco and Kansas Trucking 25% at fault for Van Dorn's injuries. Pacheco and Kansas Trucking appeal on several grounds relating to their motion for summary judgment, evidentiary rulings at trial, and the strength of the evidence on causation.

FACTS

On May 15, 2014, a construction crew was engaged in milling work on Kansas Highway 68 in Franklin County. This portion of the highway had two lanes of traffic, one moving in each direction. One of the subcontractors, Sunflower Paving, was removing an asphalt overlay from the concrete base of the highway. The Sunflower Paving crew loaded the asphalt into dump trucks owned by another subcontractor, Kansas Trucking, who would then haul the asphalt away. At approximately 8:43 a.m., Pacheco was driving a fully loaded dump truck westbound through the construction zone when he drove off the right side of the road into the ditch. The highway had a soft dirt shoulder, so when Pacheco drove off the road it caused dirt to be pushed into the westbound lane of the highway. Pacheco's truck ultimately rolled onto its side in a position close to the edge of the highway.

Travis Burris, Sunflower Paving Director of Field Operation, was concerned that the proximity of the dump truck to the highway and the dirt in the westbound lane would impede westbound traffic and possibly cause a collision. Burris and another Sunflower

2

Paving worker stood in the center of each lane and waved their arms to stop traffic in both directions in order to allow one lane of traffic to pass at a time using the eastbound lane. Burris later left his post to speak with a sheriff who had arrived at the scene; another Sunflower Paving worker took Burris' place. When that replacement worker left to get a uniloader to move the dirt off the road, Van Dorn took over directing traffic in the same manner. At approximately 9:09 a.m., McNish was driving a Chevrolet pickup westbound on Highway 68 and did not slow down as he entered the construction zone. Despite Van Dorn waving his arms to get McNish's attention, McNish struck Van Dorn. McNish advised law enforcement that he did not see Van Dorn prior to hitting him.

On October 21, 2014, Van Dorn filed a negligence claim against McNish, alleging that he had sustained traumatic brain injury and was permanently and totally disabled as a result of McNish's negligence. Van Dorn later amended his petition to include Pacheco and Kansas Trucking as named defendants, alleging, in part, that Kansas Trucking employee Pacheco's negligence in causing the dump truck rollover created the hazardous condition that caused Van Dorn to be on the highway directing traffic; therefore, Kansas Trucking was vicariously liable. McNish passed away on May 3, 2015. Diane McNish, administrator of his estate, replaced McNish as a defendant.

On February 11, 2016, Pacheco and Kansas Trucking filed a motion for summary judgment on the issue of proximate cause, which the district court denied. Thereafter, the court approved a settlement agreement between Van Dorn and McNish's estate, leaving Pacheco and Kansas Trucking (the defendants) as the only remaining defendants. The case proceeded to trial, where the defendants stipulated that Pacheco was negligent "for driving the dump truck off the road and causing the rollover of the dump truck" but defended on a theory that Pacheco's negligence was not the proximate cause of Van Dorn's injury. The defendants alternatively argued that if the jury found against them on this point, their negligence must be compared to that of McNish (for negligently driving into Van Dorn with his car), Van Dorn (for standing in the road directing traffic), the

3

Franklin County Sheriff's Department (for failing to control the accident scene or promptly close the roadway), and Sunflower Paving (for instructing Van Dorn to direct traffic and for failing to monitor the situation). After hearing evidence, the jury assessed fault as follows:

| | |
|---|---|
| William Van Dorn | 5% |
| William McNish | 52% |
| Sunflower Paving, Inc. | -0- |
| Franklin County Sheriff's Department | 18% |
| Steven Pacheco & Kansas Trucking, LLC | 25% |

The jury also found Van Dorn had suffered damages in excess of $3.2 million. After considering percentages of fault and the statutory limitations on recovery for noneconomic loss, the district court entered judgment against the defendants for $798,511.97. The district court denied the defendants' motion for a new trial.

ANALYSIS

The defendants raise the following issues on appeal: (1) The district court erred in denying their motion for pretrial summary judgment, (2) the district court erred in excluding certain evidence from admission at trial, (3) the district court erred in denying both of their motions for judgment as a matter of law at trial, and (4) the evidence was insufficient to support the jury's verdict with respect to causation. We address each of these issues in turn.

1. *Summary judgment before trial*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits or declarations show that there is no genuine issue as

4

to any material fact and that the movant is entitled to judgment as a matter of law." K.S.A. 2016 Supp. 60-256(c)(2). An appellate court reviews the district court's denial of a motion for summary judgment de novo, viewing the facts in the light most favorable to the party opposing summary judgment. "If 'reasonable minds could differ as to the conclusions drawn from the evidence'—in other words, if there is a genuine issue about a material fact—summary judgment should be denied." *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015). But when a plaintiff lacks evidence to establish an essential element of the claim, there can be no genuine issue of material fact because a complete failure of proof concerning an essential element of the plaintiff's case renders all other facts immaterial. *Crooks v. Greene*, 12 Kan. App. 2d 62, 64-65, 736 P.2d 78 (1987). Thus, summary judgment is appropriate if the movant can establish the absence of evidence necessary to support an essential element of the nonmoving party's case. *Kuxhausen v. Tillman Partners*, 291 Kan. 314, 318, 241 P.3d 75 (2010).

The defendants argue the district court should have granted their motion for summary judgment because the undisputed evidence at the pretrial stage of the proceeding established that McNish's negligence was the sole proximate cause of Van Dorn's injuries. Claiming Van Dorn failed to produce any evidence at the summary judgment stage from which a reasonable juror could have concluded that the defendants' actions were the proximate cause of Van Dorn's injury, the defendants assert the court erred in failing to grant summary judgment in their favor.

As a procedural matter, Van Dorn argues the district court's decision to deny summary judgment is moot given the jury later resolved the issue presented for summary judgment—proximate cause—after a full trial on the merits. Van Dorn's argument, however, presumes the court denied summary judgment based on a dispute of material fact on the issue of proximate cause. Ordinarily, proximate cause is a question of fact and reserved for the trier of fact. But the district court can remove the issue of proximate cause from the jury's consideration and resolve the question as a matter of law "when all

5

the evidence on which a party relies is undisputed and susceptible of only one inference." *Hale v. Brown*, 287 Kan. 320, 324, 197 P.3d 438 (2008). Relying on this exception, the defendants argue it is proper for us to review the district court's decision denying summary judgment because the material facts related to proximate cause were undisputed on summary judgment, so resolution of the issue was a matter of law for the court to decide without presenting it to a jury.

Here, the district court's journal entry states that it denied the defendants' summary judgment motion "for the reasons stated by the Court on the record in open court." Due to an audio issue, a transcript of the summary judgment hearing and the district court's ruling is not included in the record on appeal. As a result, we do not know whether the district court denied the defendants' motion based on a dispute of material fact or based purely on a matter of law. Our lack of knowledge regarding the reason for the district court's decision to deny summary judgment however does not impact our analysis of whether the issue is properly before this court on appeal. If the decision to deny summary judgment was based on a dispute of material fact on the issue of proximate cause, Van Dorn is correct that the district court properly reserved the question for a decision by the jury. But if, as the defendants assert, the district court found no dispute in material fact on the issue of proximate cause and should have decided the issue as a matter of law before proceeding to trial, appeal of that decision would be interlocutory in nature because the defendants could raise the issue in a motion for judgment as a matter of law during the trial. In fact, that is precisely what the defendants did here: they filed one motion for judgment as a matter of law at the close of Van Dorn's case-in-chief and another one at the close of all evidence. Both motions were predicated on the issue of proximate cause. Both motions were denied. The defendants seek review of all three decisions in this appeal, which necessarily would require us to consider the same legal issue under three separate records—the summary judgment record, the trial record before the defendants presented their case, and the trial record of the entire trial. For this reason, we find it both improper and a waste of judicial resources in this case to review the defendants' claim

6

that the district court erred by denying their motion for summary judgment. We will, however, review the defendants' claim that the district court erred in denying motion for judgment as a matter of law after the close of all evidence. See Issue 3 below.

2. *Excluding evidence*

The defendants argue the district court erred in excluding certain evidence from admission at trial.

Before trial, the district court entered in limine rulings that prevented the defendants from introducing the following evidence at trial:  (a) that McNish did not have a valid driver's license at the time of the accident and (b) that Sunflower Paving employees were conducting a flagging operation at the time of Van Dorn's injury. Based on these in limine rulings, the defendants proffered at trial evidence relating to both McNish's driver's license and the alleged flagging operation, thereby preserving these issues for appeal. See *National Bank of Andover v. Kansas Bankers Surety Co*., 290 Kan. 247, 278-79, 225 P.3d 707 (2010) (when district court grants motion in limine to exclude evidence at trial, party limited by motion must make sufficient proffer of excluded evidence to preserve issue for appeal).

On review of a court's decision regarding a motion in limine, the court must first determine the relevance of the challenged evidence, i.e., whether the evidence is probative and material. The district court's determination that the evidence is probative is reviewed by us for an abuse of discretion; the court's determination that the evidence is material is subject to de novo review. *Evergreen Recycle v. Indiana Lumbermens Mut. Ins. Co.*, 51 Kan. App. 2d 459, 508, 350 P.3d 1091 (2015).

Evidence is relevant if it has any tendency in reason to prove any material fact. K.S.A. 60-401(b). This definition encompasses two elements:  a materiality element and

7

a probative element. Evidence is material when the fact it supports is in dispute and is significant under the substantive law of the case. *In re Acquisition of Property by Eminent Domain*, 299 Kan. 37, 44, 320 P.3d 955 (2014). Evidence is probative if it has any tendency to prove any material fact. *State v. Dupree*, 304 Kan. 43, 63, 371 P.3d 862, *cert. denied* 137 S. Ct. 310 (2016).

a. *McNish's driver's license*

The defendants claim evidence to establish that McNish's driver's license was expired on the day he struck Van Dorn was both probative and material because it showed that McNish had breached his duty to maintain a valid license if he was going to drive. The defendants contend that the jury should have been allowed to determine whether McNish's alleged breach caused the injury to Van Dorn, which potentially could have caused the jury to assess a higher degree of fault to McNish.

Contrary to the defendants' argument, the issue in the present case was not whether McNish violated Kansas licensing statutes. Although the issue of McNish's contributory negligence was a central aspect of the trial, evidence of McNish's expired license was not material to this issue because there is no indication that his failure to have a valid driver's license contributed in any way to causing the collision and Van Dorn's resulting injuries. See *Williams v. Esaw*, 214 Kan. 658, 660-62, 522 P.2d 950 (1974) (violation of traffic law only gives rise to liability for injury of another where violation bears causal or proximate relationship to injury); see also *Henning v. Union Pacific R. Co.*, 530 F.3d 1206, 1218 (10th Cir. 2008) (citing majority rule that lack of a license is not relevant to whether driver was negligent at time of accident because "'unlike traffic regulations such as speed limits, licensing statutes do not in themselves create a standard of care that a driver is expected to meet while operating a motor vehicle'"). Evidence that McNish did not have a valid driver's license at the time of the accident was not relevant. Therefore, the district court did not err in excluding this evidence.

b. *Evidence of a flagging operation*

The defendants contend the district court erred in excluding evidence that Sunflower Paving employees were conducting a flagging operation at the time of Van Dorn's injury. A discussion of some additional facts is warranted to place the defendants' arguments in context.

One of the defendants' theories of defense at trial was that Sunflower Paving was comparatively liable for

> "its employees directing Mr. Van Dorn to stand in the lane of traffic; for having Mr. Van Dorn performing a flagging operation without proper equipment; for its supervisors failing to monitor the flagging operation and make sure its employees were complying with the Flagger's Handbook and/or training video by first standing on the side of the road until the first car is stopped; for not standing in the lane of traffic, etc. Sunflower failed to get the Stop/Slow paddles after the first accident and before the second accident. The paddles were reportedly a short distance away."

In response to this theory, Van Dorn asserted that he was conducting emergency traffic control at the time he was struck by McNish, not a flagging operation.

The district court's order in limine specifically prohibited:

> "Any testimony from the expert witnesses identified by Kansas Trucking or Steven Pacheco concerning violation of Flagging Operation Book. Defendants are permitted to present evidence from fact witnesses about where Mr. Van Dorn was trained to stand (on the shoulder) and where he was trained not to stand (in the lane of traffic).
> "Any testimony from the expert witness of Kansas Trucking, Steven Pacheco concerning the flagging operations because they do not have the proper expertise to testify about a flagging operation."

9

The defendants' proffer included testimony and witness statements, which the defendants alleged would establish that a flagging operation was occurring at the time McNish struck Van Dorn.

At trial, Burris explained the nature of the construction work that Sunflower Paving was performing on K-68, which was removing an asphalt overlay from the concrete base of the highway. Burris said that his crew was blocked off from traveling motorists, so their job did not include traffic control. Burris further testified that the only reason his crew stopped traffic to close the westbound lane was due to Pacheco's accident. On cross-examination, the defendants' counsel elicited testimony from Burris that Van Dorn had training in traffic control. Counsel also introduced into evidence a Kansas Department of Transportation Flagger Handbook and elicited testimony from Burris that the Handbook directs a worker in a flagging operation to stand on the shoulder of the road, raise his or her hand and extend a flag into the roadway, and only move to the center of the road after the first vehicle has stopped. On redirect, Burris denied that Sunflower Paving was conducting a flagging operation at the time Van Dorn was injured, explaining that a flagging operation involves specific signage and traffic cones. Burris claimed that the Sunflower Paving crew was simply involved in an emergency situation to control traffic flow and keep the public safe.

Thereafter, outside the presence of the jury, defense counsel relied on the district court's order in limine to argue that Van Dorn's counsel had opened the door to additional evidence regarding flagging operations by asking Burris on redirect whether Burris had been conducting a flagging operation. Van Dorn's counsel responded that it was defense counsel who actually opened the door first by questioning Burris about the Handbook and requesting the court allow the defense to introduce the Handbook into evidence. Van Dorn objected to the admission of the Handbook. The district court ruled that Van Dorn's objection was untimely and allowed the Handbook to be introduced into evidence at trial.

10

Nevertheless, the court declined to change its previous ruling prohibiting the introduction of any evidence relating to a flagging operation in this case.

The defendants argue that their proffered evidence established that a flagging operation was taking place at the time of Van Dorn's injury and that they should have been allowed to present this evidence at trial because Van Dorn opened the door to the admission of this evidence and because the Handbook was entered into evidence without objection. The defendants assert that this evidence was both material and probative to the jury's determination of comparative fault because Van Dorn's actions were contrary to the directives set forth in the Handbook.

Contrary to the defendants' argument, their proffered evidence did not establish that an official flagging operation was taking place. Instead, these witness statements and testimony merely made reference to "flaggers" that were "flagging traffic" or "directing traffic." The only use of the term "flagging operation" was by defense counsel in what presumably was his questioning of Burris at a deposition. The reference to "flagger" or "flagging" in the witness statements appears to be a generic term used to describe the Sunflower Paving crew and their actions. The use of these terms did not convert the emergency situation into an official flagging operation. Thus, it cannot be said that the district court erred in prohibiting the defendants from characterizing the situation as a flagging operation when no such evidence existed.

Moreover, much of the defendants' proffered evidence was ultimately admitted at trial. Defense counsel was permitted to introduce the Handbook into evidence, elicited testimony from Burris about the rules involved in a flagging operation, and obtained testimony that Van Dorn had been trained with the Handbook. In addition, several of the witness statements that referenced "flaggers" and "flagging traffic" were also admitted into evidence. The district court's ruling did not prohibit the defense from using the terms "flagging" or "flagging traffic," and defense counsel was allowed to argue that Van Dorn

had acted contrary to his safety training during opening and closing argument. The district court did not err in ruling on this issue.

3. *Judgment as a matter of law*

As discussed above, the defendants sought judgment as a matter of law on the issue of proximate cause at the close of Van Dorn's case-in-chief and at the close of all evidence. The district court denied both motions. The defendants argue the district court's rulings were in error.

K.S.A. 2016 Supp. 60-250(a)(1) provides authority for a district court to enter judgment as a matter of law during a jury trial:

> "If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> "(A) Resolve the issue against the party; and
> "(B) grant a motion for a judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."

A district court's decision on a motion for judgment as a matter of law is reviewed de novo to determine "whether evidence existed from which a reasonable jury 'could properly find a verdict for the nonmoving party.'" *Siruta*, 301 Kan. at 766. When ruling on a motion for judgment as a matter of law, the district court is required to resolve all facts and inferences that may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds could reach different conclusions based on the evidence, the motion must be denied. The appellate court must apply a similar analysis when reviewing the grant or denial of a motion for judgment as a matter of law. 301 Kan. at 766.

12

In support of their claim that the district court erred in denying their motions for judgment as a matter of law, the defendants argue Van Dorn failed to present any evidence at trial from which a jury could conclude that Pacheco's negligence was the proximate cause of his injury. Without such evidence, the defendants argue they are entitled to judgment as a matter of law.

We begin our analysis with the definition of proximate cause:

"The proximate cause of an injury is the cause that in a natural and continuous sequence, unbroken by any superceding cause, both produced the injury and was necessary for the injury. The injury must be the natural and probable consequence of the wrongful act. Individuals are not responsible for all *possible* consequences of their negligence, but only those consequences that are *probable* according to ordinary and usual experience. [Citations omitted.]" *Hale*, 287 Kan. at 322.

Proximate cause incorporates concepts that fall into two categories: causation in fact and legal causation. To establish causation in fact, a plaintiff must prove a cause-and-effect relationship between a defendant's conduct and the plaintiff's loss by presenting sufficient evidence from which a jury can conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred. To prove legal causation, the plaintiff must show it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes was foreseeable. *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 420-21, 228 P.3d 1048 (2010). As noted above, proximate cause is ordinarily a question of fact for the jury. But defendants argue in this case that proximate cause was a question of law at trial to be decided by the court and not the jury. The question of proximate cause becomes a question of law for the court only "when all the evidence on which a party relies is undisputed and susceptible of only one inference." *Hale*, 287 Kan. at 324.

a. *Causation in fact*

Although the defendants claim that McNish, as the driver who struck Van Dorn, was the cause in fact of Van Dorn's injuries, they appear to concede that Pacheco's accident was also the cause in fact of the injury to Van Dorn, stating: "Certainly, had Pacheco not rolled off the side of the road, Van Dorn would not have later been ordered to direct traffic, McNish would not have struck him and Van Dorn would not have been injured." Thus, it appears there is no real dispute on the issue of causation in fact.

b. *Legal causation*

To prove legal causation, a plaintiff must show the injury was a natural and probable consequence of the wrongful act. "Individuals are not responsible for all *possible* consequences of their negligence, but only those consequences that are *probable* according to ordinary and usual experience. [Citation omitted.]" *Hale*, 287 Kan. at 322. The defendants argue there is no evidence in the record from which a jury could reasonably infer that Van Dorn's injuries were a natural and probable consequence of Pacheco's negligence. Specifically, the defendants note that this case involves two separate accidents that occurred 26 minutes apart, and suggest that McNish's intervening negligent act relieved them of liability.

When determining whether an intervening negligent act relieves the original wrongdoer of liability, our Supreme Court has stated:

"Whether the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the intervening negligent act of another is determined by the test of foreseeability. If the original actor should have reasonably foreseen and anticipated the intervening act causing injury in the light of the attendant circumstances, his [or her] act of negligence would be a proximate cause of the injury. Foreseeability of some injury from an act or omission is a prerequisite to its being a proximate cause of the injury for

14

which recovery is sought. When negligence appears merely to have brought about a condition of affairs or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct and proximate cause and the former only the indirect or remote cause." *George v. Breising*, 206 Kan. 221, 227, 477 P.2d 983 (1970).

See *Edwards v. Anderson Engineering, Inc.*, 45 Kan. App. 2d 735, 740-41, 251 P.3d 660 (2011).

An intervening cause absolves a defendant of liability only if it supersedes the defendant's negligence. In other words, the superseding and intervening cause component breaks the connection between a negligent act and the harm caused. See *Hale*, 287 Kan. at 324. One more factor—foreseeability—must be considered. "If the intervening cause is foreseen or might reasonably have been foreseen by the first actor, his [or her] negligence may be considered the proximate cause, notwithstanding the intervening cause. [Citation omitted.]" *Miller v. Zep Mfg. Co.*, 249 Kan. 34, 51, 815 P.2d 506 (1991).

In support of their claim that an intervening act (McNish's negligence) absolved them from any liability, the defendants rely primarily on *Hale*, 287 Kan. 320, and *Erickson v. O'Malley*, No. 113,559, 2016 WL 2809716 (Kan. App. 2016) (unpublished opinion).

In *Hale*, Jason Packard, an employee of Topeka Electric Construction, Inc., was driving east on I-470 in Topeka when he lost consciousness and drove his truck into a tree near an off-ramp. Traffic on the interstate became congested as a result of the accident. About 35 minutes later, Mary Hale was driving east on I-470 when she noticed the congestion, so she slowed down and then stopped. Judy Brown was driving behind Hale and collided with the rear of Hale's stopped car. Hale was injured as a result of the accident and filed a negligence action against Brown, Packard, and Topeka Electric Construction. Hale settled her claims against Brown. The district court granted Packard's

15

and Topeka Electric Construction's motion to dismiss based on a lack of proximate cause. 287 Kan. at 321. A panel of this court affirmed the district court's ruling. See *Hale v. Brown*, 38 Kan. App. 2d 495, 167 P.3d 362 (2007). On review, the Kansas Supreme Court also affirmed. Specifically, the court found that the district court had properly considered the length of time between the first and second accidents and Brown's intervening negligent act in determining whether proximate cause existed as a matter of law, holding that "[a] review of the factual allegations confirms the district court's legal conclusion that the passage of time and Brown's negligence interrupted the continuing chain of causality from Packard's asserted negligence to Hale's accident." *Hale*, 287 Kan. at 324.

In *Erickson*, Natalie Marquez was driving east on Kimball Avenue in Manhattan. When Marquez stopped for a red light at an intersection, her car ran out of gas. Kenyon Erickson, also driving east on Kimball, saw Marquez' car stopped at a green light in the lane of travel with the car's hazard lights flashing. Erickson pulled over and walked up to Marquez' passenger side window to see if she needed help. Marquez replied that she did not and had already called someone. While Erickson's head was still in the passenger side window of Marquez' car, Harold O'Malley rear-ended Marquez' car, causing its center roof support to hit Erickson. Erickson sued both Marquez and O'Malley. Erickson alleged that O'Malley negligently ran into Marquez' car, causing him injury, and that Marquez was negligent in failing to take reasonable care in the maintenance of her car and in not removing her car from the open lane of traffic. Marquez moved for summary judgment, claiming she had no duty to protect Erickson from O'Malley's negligence and that if she breached any duty, that breach was not the proximate cause of Erickson's injuries. The district court granted Marquez summary judgment, finding that she did not owe a duty to Erickson. 2016 WL 2809716, at *1.

On appeal, Erickson argued that Marquez owed a duty of care to him and that she was the proximate cause of his injuries. A panel of this court rejected Erickson's

16

arguments. First, the court held Marquez owed no duty to Erickson, who voluntarily left his car to ask whether she needed assistance, and otherwise had no duty to control O'Malley's actions. 2016 WL 2809716, at *4-8. Second, the court held that even if Marquez was negligent, the sequence of events that led to Erickson's injury was "an unforeseeable scenario that a reasonable person could not be expected to anticipate." 2016 WL 2809716, at *9. Thus, the court concluded that even though the placement of Marquez' car in the road was "a link in the chain leading to Erickson's injury," it was an insufficient condition for imposing liability because the injury was not foreseeable. 2016 WL 2809716, at *9. Affirming the decision of the district court, this court determined summary judgment was proper because the evidence permitted no reasonable inference to support proximate cause.

The defendants' reliance on *Hale* and *Erickson* to support their position in this case is misplaced, as the facts in both *Hale* and *Erickson* are readily distinguishable. To that end, this court's analysis in *Hale* is instructive. Noting that "it is difficult to wrest general rules from these fact-specific cases that will universally predict the results," the court examined multiple cases involving successive accidents. *Hale*, 38 Kan. App. 2d at 500. The cases reviewed established that, as a general rule, the negligent conduct of the original wrongdoer was not insulated by the intervening negligent act of another when an obstruction from the initial accident was still blocking the roadway when the second accident occurred or when only a short period of time had lapsed between the accidents. On the other hand, the cases reviewed also established that the intervening negligent act of another relieved the original wrongdoer of liability for negligence when a substantial amount of time had elapsed, when the initial accident did not obstruct the roadway, when the later accident was caused by the distraction of the initial accident or inattention of a later driver, or when other circumstances occurred to establish that the subsequent accident was not a probable consequence of the first. 38 Kan. App. 2d at 501-03.

17

Given the evidence presented at trial here, we must decide whether Van Dorn presented sufficient evidence from which a jury could conclude that his injuries were a natural and probable consequence of Pacheco's negligence; in other words, whether it was reasonable for Pacheco to have anticipated there would be a need for traffic control and to have foreseen that some type of accident or injury would occur as a result of his negligence. Van Dorn presented the following evidence during his case-in-chief:

- Pacheco drove his dump truck off the side of the highway, leaving dirt in the westbound lane of traffic. Pacheco's truck was overturned and in close proximity to the highway.
- Multiple witnesses testified that the westbound lane needed to be closed immediately to avoid a risk of injury to the motoring public.
- Sunflower Paving employees undertook to close the westbound lane by stopping traffic in both directions and alternating traffic in the eastbound lane.
- The only reason Sunflower Paving employees were directing traffic was because of the dirt in the road.
- While Van Dorn was directing traffic, McNish hit him, causing severe injuries.

Based on this evidence, we find Van Dorn satisfied his burden to show Pacheco's act of negligence was a proximate cause of the injury. Specifically, we conclude from the evidence presented at trial that Pacheco should have reasonably foreseen and anticipated that his initial negligent act created the risk of injury to a worker who was directing traffic. See *Yount v. Deibert*, 282 Kan. 619, 624-25, 147 P.3d 1065 (2006). No evidence presented during the defense's case-in-chief changed this outcome. And the fact that the second accident occurred 26 minutes after the first accident has no real bearing on the issue of proximate cause in this case because the traffic control due to the first accident was still taking place at the time of the second accident. The passage of time and McNish's negligence did not interrupt the continuing chain of causality from Pacheco's initial negligence to Van Dorn's injuries. Even the defendants' own expert acknowledged

18

that Pacheco's negligence created an immediate and present danger necessitating immediate closure of the westbound lane of the highway. For all of these reasons, we agree with the district court that judgment as a matter of law on the issue of proximate cause was not appropriate.

4. *Sufficiency of the evidence*

Finally, the defendants argue that the evidence was insufficient to support the jury's verdict that their actions were the proximate cause of Van Dorn's injuries.

When a verdict or district court decision is challenged for insufficiency of the evidence or as being contrary to the evidence, an appellate court does not reweigh the evidence or pass on the credibility of the witnesses. If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the verdict will not be disturbed on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011).

As previously discussed, proximate cause incorporates both the concepts of causation in fact ("but for" causation) and legal causation (foreseeability). *Puckett*, 290 Kan. at 420-21. It is undisputed that but for Pacheco's admitted negligence, Van Dorn would not have been in the roadway directing traffic when he was struck by McNish. And given the circumstances attendant to Pacheco's accident discussed in length in the previous section, we find sufficient evidence from which a jury could conclude that Pacheco should have foreseen and anticipated the risk of injury to a worker who was directing traffic as a result of Pacheco's initial negligent act. When considered in the light most favorable to Van Dorn, the evidence supports the jury's verdict that the defendants were 25% at fault for Van Dorn's injuries.

Affirmed.